IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PAUL MEUNIER, | ) | Civil No.: 3:12-cv-01005-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| THE NORTHWESTERN MUTUAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Michael J. Knapp
621 SW Morrison Street, Suite 900
Portland, OR 97205

Attorney for Plaintiff

Richard S. Pope
Kristen A. Chambers
Kirklin Thompson & Pope LLP
1000 SW Broadway, Suite 1616
Portland, OR 97205

Attorneys for Defendant

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff Paul Meunier brings this insurance related action against Defendant The Northwestern Mutual Life Insurance Company ("Northwestern"). Currently pending before the court are Defendant's motion for summary judgment as to all Plaintiff's claims and Plaintiff's motion seeking a determination from the court that the insurance policies Defendant issued to Plaintiff contain unconscionable contract terms which should be deleted from Plaintiff's policies. Plaintiff also requests that the court then enforce the terms of Plaintiff's policies as they would be without the allegedly unconscionable terms.

For the reasons set out below, Defendant's motion should be granted as to all Plaintiff's claims and Plaintiff's motion should be denied.

<u>**Claims**</u>

Plaintiff brings three claims.

Plaintiff's first claim seeks a determination by the court that there is an unconscionable and, therefore, unenforceable term in certain insurance policy contracts between Plaintiff and Defendant. Plaintiff also seeks a declaration by the court that, with the elimination of this unenforceable term, Plaintiff is and has been entitled to renew Future Increase Benefit coverage and is entitled to a recalculation of his monthly disability benefit based on renewal of this coverage.

Plaintiff's second claim alleges that, if the unconscionable term is excised, Defendant wrongfully refused to renew the Future Increase Benefit coverage sections of Plaintiff's insurance policies and breached the insurance contracts set forth in those policies by failing to pay Plaintiff disability benefits in the full amount that Plaintiff is entitled to receive based on such Future Increase Benefit coverage.

Plaintiff's third claim alleges that Defendant breached the covenant of good faith and fair dealing implied in Plaintiff' insurance policy contracts by improperly using its unilateral discretion to lower policy issue limits.

### Background

The parties allege the following facts.

Plaintiff is a radiologist who, between 1991 and 2010, was the self-employed owner of a radiology practice.  Plaintiff purchased disability insurance policy No. DI088078, from Defendant with an initial monthly benefit of $11,545 and an initial quarterly premium of $1535.21("Main Policy").  This policy became effective on November 10, 1994.  Plaintiff then purchased a supplemental policy from Defendant (Policy No. D1098423) with an initial monthly benefit of $2000 and an initial quarterly premium of $281.95 ("Supplemental Policy").  The Supplemental Policy became effective on January 10, 1995.

There was available, as an optional feature of the policies, a Future Increase Benefit (FIB) provision which permits the insured to have the periodic option to purchase cost-of-living increases in his disability coverage.   The FIB feature provides for an increase, based on the consumer price index, of no less than 4% and no more than 8% of the insured's monthly benefit on each annual policy anniversary.  There is no cost to include the feature in a policy.  However, each time the insured opts to purchase the increased coverage under the FIB, there is an additional premium that must be paid for the increase in coverage.  The FIB is initially effective for four years and may then be renewed by the insured every five years if the insured meets certain financial underwriting standards. A policyholder can decline the FIB increases by not paying the increased premium resulting from the FIB or by sending a written notice to Defendant's "Home Office" before the increase takes effect.

FINDINGS AND RECOMMENDATION – 3

In each of the four years of the initial period Plaintiff accepted the option to purchase the FIB increases on both policies at issue, was sold those increases by Defendant and paid the resulting increased premiums.  By 1999, Plaintiff's potential disability benefits from the two policies totaled $16,391.

At the conclusion of the initial four-year period, Defendant was obligated to renew Plaintiff's FIB eligibility for successive five year terms if certain contractual terms and conditions were met at the time of renewal.  The renewal section of the FIB provision states:

5.  RENEWAL

Page 3 shows the last date on which this Benefit is in effect.  However, if it is stated on page 3 that this Benefit is renewable, the Owner may renew this Benefit for subsequent five-year periods.  In no event will the Benefit be in effect after the first policy anniversary after the 64th birthday of the insured.

To renew this Benefit, the Insured must meet the Company's financial underwriting standards that are then in effect.  These standards include:

- the Insured's earned and unearned income;
- the Insured's net worth;
- the amount and type of disability coverage that the Insured has or for which the Insured may be eligible after a qualifying period of employment; and
- the Company's issue limits.

Chambers Decl., Ex. 3, §5.

The phrase "issue limits" is not a defined term in the policy but is defined in Defendant's written underwriting guidelines, entitled "Individual Disability Insurance Underwriting Handbook."  Under the guidelines, the issue limit is the maximum amount of individual disability coverage that an applicant may have in force on his or her life from all sources, but excluding group disability coverage.  When Plaintiff purchased the Main Policy in November of 1994, the issue limit on the policy's monthly benefit was $25,000.

FINDINGS AND RECOMMENDATION – 4

In an Information Release dated December 19, 1994, Defendant's Director of Disability Insurance Underwriting Standards notified all sales agents that, effective January 14, 1995, "certain underwriting rules, limits and occupation classifications will change for Individual Disability Income applications on all physicians (MDs and DOs) and dentists."  Those changes included implementation of a $15,000 issue limit for all disability income applications.  The Information Release also indicated that "FIB . . . will be available on new coverage for physicians and dentists up to and including $15,000, which is a 'coverage in all companies' maximum" and that FIB increases would be "shut off" at the time of re-underwriting when coverage reached or exceeded $15,000.

According to Plaintiff, sometime shortly after he purchased his Main Policy, Defendant's sales agent, Gaylord Davis, contacted him and told him he qualified for an additional $2,000 in disability coverage and encouraged him to take out this additional coverage "right away." Plaintiff also asserts that, at the time Davis contacted him about purchasing additional coverage Davis did not inform him that Defendant had decided to reduce issue limits from $25,000 to $15,000.  Plaintiff purchased the Supplemental Policy with an FIB provision.  The Supplemental Policy had an effective date of January 10, 1995.

When Plaintiff's policies came up for renewal in 1998 and 1999, issue limits then in effect were $10,000 for non-cancellable coverage and $15,000 for all coverage.  The monthly benefit provided by Plaintiff's combined non-cancellable disability coverage at that time was $16,391.  In a letter dated October 12, 1999, Defendant notified Plaintiff that he did not meet the underwriting standards required to renew the FIB provision on his Supplemental Policy.

On Annual Policy Statements for Plaintiff's Main Policy for November 10, 2000 through 2011 and for Plaintiff's Supplemental Policy for January 10, 2000 through 2012, there were no

FINDINGS AND RECOMMENDATION – 5

increases in Plaintiff's benefits or premiums and the FIB was no longer reflected on the

statement as an optional benefit. Chambers Decl. Ex. 8.  From November 10, 1999 going

forward to 2011, the maximum monthly benefit provided by Plaintiff's Main Policy was

$14,049.  From January 10, 1999 going forward, the maximum monthly benefit provided by

Plaintiff's Supplemental Policy was $2, 342.

     In 1997, Plaintiff made an unrelated claim for disability insurance benefits.  Following a

dispute regarding the continuation of benefits, Plaintiff and Defendant reached a settlement

which was ultimately reduced to a written Settlement Agreement and General Release which

Plaintiff signed on December 21, 2000.  The Settlement Agreement and General Release sets

forth, in pertinent part that:

> (3) Dr. Meunier, on behalf of himself, and on behalf of Body Imaging, and his and its heirs, executors, administrators, successors and assigns, does hereby release, acquit and forever discharge Northwestern, its officers, trustees, attorneys, employees, agents, affiliates, successors and assigns (hereinafter collectively "Releasees"), of and from any and all causes of action, suits, accounts, debts, liabilities, claims and demands whatsoever, known and unknown,(including, but not limited to, any and all claims for attorney fees) which Dr. Meunier or Body Imaging has had, now has, or may hereafter have against Releasees or any of them, related to or connected with any and all matters, acts, omissions or events which have occurred or existed from the beginning of time to the date of execution of this Agreement, including, but not limited to, those which arise out of or are in any manner whatsoever, directly or indirectly, connected with or related to:
>
> (a) the Policies, except for any claim under policy no.'s DI088078 or DI098423 pertaining to any periods of time after Dr. Meunier executes this Agreement; or
>
> (b) any act, omission, dealing, investigation, communication, claims administration, conduct, negotiation, statement or litigation tactic, of any kind whatsoever by any of the Releasees, or between Dr. Meunier, Body Imaging, or his or its representatives and any of the Releasees, or between anyone acting or purporting to act on their respective behalf.

Chambers Decl. Ex. 11, pg. 10.

FINDINGS AND RECOMMENDATION – 6

In 2004, Defendant again declined to renew the FIB provisions in Plaintiff's policies.  At oral argument, the parties stipulated that Plaintiff received a non-renewal notification letter that was substantially the same as the October 1999 non-renewal letter.  In February of 2005, Plaintiff contacted Defendant by letter disputing Defendant's 2004 refusal to renew the FIB provisions on both of Plaintiff's policies.  Defendant's  Director of Disability Income Underwriting, Jim Kern, responded by letter dated February 18, 2005, explaining that at the time Plaintiff's policies "came up for renewal of the FIB, the issue limit for your occupation was $10,000.  Because your total coverage . . . was over the $10,000 limit at the time of renewal, the FIB could not be renewed." Chambers Decl., Ex. 12, pg. 2.  Plaintiff again wrote to Defendant in April of 2005 arguing he was entitled to increases up to $25,000.  Kern responded in writing with further explanation of the underwriting standards and the FIB provision and emphasizing that the standards included the Company's issue limits in effect at the time of renewal and not at the time of original purchase.

In April 2011, Plaintiff filed a claim to recover partial disability benefits under the two disability insurance policies held by Defendant.  Under the policies, a determination of partial disability entitles the insured to a proportion of his monthly benefit.  If an insured has at least an 80% loss of earned income, the proportionate benefit is 100% of the full benefit.  In a letter dated August 15, 2011, Defendant informed Plaintiff that it would honor his partial disability claim.

In a letter dated September 15, 2011, Defendant responded to an August 11, 2011 letter from Plaintiff regarding his concerns about the lack of FIB increases.  Defendant's letter explains that

> . . . . In 1999 and 2000 when the FIB riders on these policies first came up for renewal the amount of your coverage exceeded $15,000. At that time, the Company's issue limit was $15,000 for someone in your occupational class. As a result, neither rider could be renewed.  Unless or until the FIB riders are renewed,

FINDINGS AND RECOMMENDATION – 7

your policies are not eligible for FIB increases. Since the Company issue limit remains at$15,000, your FIB riders have not been able to meet the Company's financial underwriting standards for renewal.

We understand that the Company's issue limits were higher at the time you originally purchased your policies but those limits were subsequently reduced. We do clearly state in the FIB rider that the financial underwriting standards used at time of renewal eligibility are the standards *then in effect.*

Knapp Decl., Ex. E, pg. 1 (emphasis in original).

Between November 2011 and September 2013, Plaintiff received $16, 391 a month in disability benefits from Defendant. The parties' memoranda indicate that Plaintiff continues to receive this amount monthly.

## Evaluating Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the

FINDINGS AND RECOMMENDATION – 8

record as a whole could not lead the trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." A.C.L.U. of Nev. v. City of Las Vegas, 466 F.3d 784, 790–91 (9th Cir. 2006) (quoting A.C.L.U. of Nev. V. City of Las Vegas (A.C.L.U. I), 333 F. 3d 1092, 1096-97 (9th Cir. 2003).

**Discussion**

**I.  Unconscionability of "Issue limits" Term in FIB Renewal Provision**

In his Motion, Plaintiff seeks a determination by the court that the term "the Company's issue limits" included within the "Renewal" provision of the FIB section of his policies is unconscionable and should be removed.  Plaintiff also moves the court to then enforce the policies as if the unconscionable term does not exist, thereby obligating Defendant to provide Plaintiff a monthly disability benefit amount in accord with the increases that would otherwise have been provided for by the terms of the FIB section of Plaintiff's policies.

The parties agree that the question of whether a contract term is unconscionable is an issue to be decided by the court as a matter of law.  W.L. May Co., v. Philco-Ford Corp., 273 Or. 701, 707, 543 P.2d 283, 286 (1975).  It is an issue that the court must assess on the basis of facts in existence at the time the contract was made.  Id.  The party asserting unconscionability bears the burden of proof.  Motsinger v. Lithia Rose–FT Inc., 211 Or. App. 610, 614, 156 P.3d 156, 159 (2007).

Relying on the guidance of the Uniform Commercial Code, the Oregon Supreme Court noted that the basic test for unconscionability in a commercial setting is whether

"in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under circumstances existing at the time of the making of the contract.... The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."

W.L. May Co., 273 Or. at 707 (quoting UCC § 2-302, CMT. 1).  Unconscionability has both a

procedural and substantive component. Id., at 707-708.  Procedural unconscionability refers to

the conditions of contract formation and

"focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms."

Vasquez–Lopez v. Beneficial Oregon, Inc., 210 Or. App. 553, 566-567, 152 P.3d 940, 948 (2007), (quoting Acorn v. Household Intern. Inc., 211 F. Supp. 2d 1160, 1168 (N.D. Cal. 2002))(internal quotation marks and citations omitted).

Substantive unconscionability refers to the terms of the contract and "focuses on the one-

sided nature of the substantive terms.  Acorn, 211 F. Supp. 2d. at 1168.  Under Oregon law, both

procedural and substantive unconscionability are relevant but only substantive unconscionability

is "absolutely necessary." Vasquez–Lopez, 210 Or. App. at 567.  Oregon courts consider a

number of factors in evaluating whether a term in unconscionable:

The primary focus . . . appears to be relatively clear: substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue.

Carey v. Lincoln Loan Co., 203 Or. App. 399, 422-423, 125 P.3d 814, 828 (2005) aff'd, 342 Or.

530 (2007).

FINDINGS AND RECOMMENDATION – 10

A.  <u>Substantive Unconscionability</u>

     Because a determination of substantive unconscionability is essential to the question of whether a contract term is, on the whole, unconscionable, I will address the parties' arguments on this issue first.  As noted above, substantive unconscionability refers to the terms of the contract and "focuses on the one-sided nature of the substantive terms."  <u>Acorn</u>, 211 F. Supp. 2d. at 1168.

     Plaintiff argues that the "issue limit" term in his policies is unconscionable because inclusion of the term in the FIB renewal section of his policies allows Defendant to "secretly manipulate the amount of coverage that plaintiff may obtain from [Defendant]" and effectively gives Defendant the "power to forever shut off plaintiff's ability to renew the FIB coverage in his policies." Plaintiff's Motion at 8.  Plaintiff argues that this is an obviously one-sided term in favor of the party with greater bargaining power – Defendant – because it allows Defendant to serve its own interests while interfering with the interests of Plaintiff.

     Plaintiff emphasizes that he is not arguing that the entire FIB provision is unconscionable but that "the specific term in the Renewal part of the FIB section which allows [Defendant] to unilaterally and secretly preclude plaintiff from ever renewing his FIB coverage is substantively unconscionable." Pl.'s Reply at 4.  Plaintiff also does not dispute that Defendant can write policies that take into account current market conditions and can apply the underwriting guidelines it chooses when it decides who to insure and how much coverage to offer.  Plaintiff asserts that his dispute is with what he calls a "bait and switch maneuver" in which Defendant sold to Plaintiff policies that included the FIB provision but included a renewal term that had nothing to do with Plaintiff's insurability and allowed Defendant "to shut off plaintiff's ability to ever renew his FIB coverage . . . ." Pl.'s Response at 13-14.

Plaintiff's arguments fail.  First, as the Oregon Court of Appeals has noted, "the doctrine of unconscionability does not relieve parties from all unfavorable terms that result from the parties' respective bargaining positions; it relieves them from terms that are *unreasonably* favorable to the party with greater bargaining power." Motsinger, 211 Or. App. at 626-627 (emphasis in the original).  Even assuming Defendant had the greater bargaining power, the term "issue limits" does not *unreasonably* favor it.  Plaintiff argues that he only objects to the specific term "issue limits."  However, that term must be evaluated in context and under the circumstances in existence at the time the contract was made. Vasquez–Lopez, 210 Or. App. at 556.  The challenged term must also be evaluated in "light of both the general commercial background and the special commercial needs of the particular trade involved." W.L. May, 273 Or. at 707-708; and the term's "setting, purpose and effect."  Carey, 203 Or. App at 422 (quoting Restatement (Second) of Contracts § 208, Comment a).

Here, the FIB provision was an optional enhancement to the policy.  Plaintiff received the benefit of the FIB provisions in two policies for the each of the four years after purchase of the policy with no medical or financial underwriting reviews and the potential to renew after those first four years.  Other than an additional premium if he chose to purchase the increased coverage in each of the four years, there was no additional cost for this optional benefit.  The "issue limits" at the time the contract was made were $25,000.  The record supports only the conclusion that Defendant used the issue limits term to tighten its underwriting standards in response to changing market risks and that at the time of purchase "nobody [knew] what those standards [would] be in the future." Pope Decl. in Response, Ex. 4, pg. 2.  Although the change in issue limits precluded Plaintiff from renewing the FIB provisions during the time at issue, they did not, as Plaintiff

FINDINGS AND RECOMMENDATION – 12

suggests, "automatically shut[] off plaintiff's ability to ever renew his FIB coverage in his policies."

Under Oregon law, the bar for establishing unconscionability has, historically, been a high one. See Bagley v. Mt. Bachelor, Inc., 258 Or. App. 390, 407, 310 P.3d 692, 702-703 (2013) rev. allowed 354 Or. 699, 319 P.3d 696 (Jan. 7, 2014)("substantive rigor [is] historically applied by Oregon courts in assessing unconscionability").   Although the "issue limits" term favors Defendant in that it grants the Defendant the ability to modify its underwriting standards, the record does not support the conclusion that, in light of the disputed term's "setting, purpose and effect" it is *unreasonably* favorable as required to establish substantive unconscionability. Accordingly, I conclude that substantive unconscionability is not present here.

B.  Procedural Unconscionability

While the issue of procedural unconscionability is not "essential," it is, nonetheless, relevant.  See Vasquez v. Lopez, 210 Or App. at 567 (finding both procedural and substantive unconscionability relevant, but only substantial unconscionability absolutely necessary).  I, therefore, turn to the parties arguments regarding this issue.

Plaintiff contends that the "issue limit" term in his policies is procedurally unconscionable because both "oppression" and "surprise" are involved.  Plaintiff argues that "oppression" exists because Defendant wrote the insurance policies it sold to Plaintiff, Plaintiff had no opportunity to negotiate the terms and if Plaintiff wanted the FIB coverage he had to accept the terms of the FIB renewal section and purchase the policies on a "take it or leave it basis."  Plaintiff's Motion at 15; Plaintiff's Response at 11.  Plaintiff argues that "surprise" is involved because the term "issue limits" was not defined in the policies nor do the policies explain how issue limits will be used.

FINDINGS AND RECOMMENDATION – 13

Such arguments are unavailing.  The mere fact that the agreements at issue are adhesion contracts does not render them procedurally unconscionable.  Sprague v. Quality Restaurants Northwest, Inc., 213 Or. App. 521, 526, 162 P.3d 331, 334(2007) (citing Best v. U.S. Nat. Bank of Oregon, 303 Or. 557, 560, 739 P.2d 554 (1987)).  And while, as Plaintiff points out, procedural unconscionability *may*, and not *must*, be proven with a showing of deception, compulsion, or pressure tactics, it is clear that under Oregon law these components are vital factors. See Vasquez-Lopez, 210 Or. App. 553, 567 (2007)(finding unconscionability where there was unequal bargaining power and plaintiffs were actively misled); Sprague, 213 Or. App. at 526(finding no procedural unconscionability in arbitration provision of an adhesion contract where there was no evidence of deception or other oppressive circumstances); Motsinger, 211 Or. App. at 615 (finding no procedural unconscionability in a "take-it-or-leave-it" arbitration clause where no showing of deception or compulsion).

Plaintiff cites to an excerpt of Bagley, 258 Or. App. at 407, to support his argument that he has established the oppression factor through a showing of "inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." Id.  The court in Bagley ultimately rejected the plaintiff's unconscionability claim, noting that he had advanced only a generalized argument that the agreement was an adhesion contract and there was a disparity in bargaining power.  Id. at 406-407.  The court also emphasized the

substantive rigor historically applied by Oregon courts in assessing unconscionability

" '[T]he doctrine of unconscionability does not relieve parties from all unfavorable terms that result from the parties' respective bargaining positions; it relieves them from terms that are *unreasonably* favorable to the party with greater bargaining power. Oregon courts have been reluctant to disturb agreements between parties on the basis of unconscionability, even when those parties do not come to the bargaining table with equal power. In those rare instances in which our courts have declared contractual provisions unconscionable, there existed serious procedural and substantive unfairness.' "

FINDINGS AND RECOMMENDATION – 14

Bagley, 258 Or. App. at 406 (citing Hatkoff v. Portland Adventist Medical Center, 252 Or.App. 210, 217, 287 P.3d 113 (2012)) (emphasis in original).

The record here shows that Plaintiff was an educated consumer with significant experience with various business contracts and, specifically, with applications for disability insurance. Pope Decl. ISO MSJ Exs. 2, 3, 6; Pope Decl.in Response, Ex. 2, pp. 9-13, 17-18. The term "issue limit" is set out by bullet point under a numbered section in the FIB provision. Pope Decl. In Response, Ex. 1, pg. 14. Plaintiff produces no evidence that he was unable to review the insurance contracts or that he was prevented from making inquiries as to the meaning of any terms. Although the term "issue limit" was not defined in the policy, there is no evidence that Defendant obtained any agreement from Plaintiff through outright deception or other improper means or that at the time of purchase Plaintiff was prevented from inquiring into the meaning of that term or any other.

Furthermore, the "issue limit" term is part of an *optional* provision for Future Increase Benefits. There was no additional charge to add on the FIB unless and until the insured chose to purchase increased coverage under the option, at which time there was an additional premium. Purchase of the FIB option was not a requirement for obtaining the insurance policies as a whole. Chambers Decl. ISO MSJ, Ex. 6, pp 3-4. This is not a situation, like in other cases, where the party with less bargaining power faced "no other apparent choices for adequate housing for their family" Carey, 203 Or. App. at 425; or were actively misled and lacked the language skills to bargain for more favorable terms. Vasquez-Lopez, 210 Or. App. 553. To extend the concept of unconscionability far enough to encompass the facts of this case would, I believe, start us down the proverbial slippery slope and fly in the face of the "substantive rigor" historically applied to assessing unconscionability. I decline to take such a step here and conclude that, based on the

record before the court and granting all reasonable inferences, as a matter of law the term at issue

was not procedurally unconscionable.

With the guidance of the above cases in mind, a careful review of the evidence and

giving the non-moving party in each instance the benefit of all reasonable inferences, I conclude

that the record as a whole could not lead a trier of fact to find that the term "the Company's issue

limits" as it appears in the Renewal section of the FIB provisions of Plaintiff's policies is

unconscionable. Accordingly, I recommend that Plaintiff's motion seeking a declaration that the

term is unconscionable should be denied and Defendant's motion as to Plaintiff's First Claim be

granted. Furthermore, as Plaintiff has conceded that his claim for breach of contract was

predicated on prevailing on the issue of unconscionability and enforcement of the insurance

contracts absent the "issue limits" term, Defendant's motion for summary judgment as to

Plaintiff's breach of contract claim should also be granted.

## II. <u>Good Faith and Fair Dealing</u>

In Oregon, a duty of good faith and fair dealing is implied in every contract. <u>Best</u>, 303

Or. at 561 (1987). A party may recover contract remedies for the breach of that obligation. <u>Id.</u>  In

Oregon, the good faith doctrine is applied to "effectuate the reasonable contractual expectations

of the parties." <u>Id</u>. at 563. The court must examine "only the *objectively* reasonable expectations

of the parties . . . in determining whether the obligation of good faith has been met." <u>Tolbert v.

First Nat. Bank of Oregon</u>, 312 Or. 485, 494, 823 P.2d 965 (1991) (emphasis added).

Furthermore, "[w]hen one party to a contract is given discretion in the performance of some

aspect of the contract [and that] discretion is exercised for purposes not contemplated by the

parties, the party exercising discretion has performed in bad faith." <u>Best</u> at 563 (citations

omitted).

FINDINGS AND RECOMMENDATION – 16

Defendant argues that its decisions to alter the "issue limits" for Plaintiff's occupational class were consistent with the contract and in furtherance of objectively reasonable business interests and that it, therefore, as a matter of law did not breach the implied duty of good faith and fair dealing.  Defendant contends that it is unambiguous both that the issue limits are a separate requirement from the other underwriting standards that apply to renewal and that the term "then in effect" as applied to the FIB Renewal provisions reflects the parties anticipation of change to those limits.  Defendant argues that the parties agreed to and the contract provided for a unilateral exercise of discretion and the discretion was exercised after prior notice.

Plaintiff argues that at the time he purchased his policies, the parties did not expressly contemplate that Defendant's "authority to change the issue limits that apply to plaintiff's FIB coverage, and thereby preclude plaintiff from ever renewing [it]."  Plaintiff also asserts that Defendant's conduct violated Plaintiff's objectively reasonable expectations and that, in any event, the question of whether Defendant acted in bad faith is a question of fact to be decided by a jury.

I have carefully reviewed the parties' thorough briefing on this issue and have examined both the case law cited and other related cases, including the <u>Best</u> and <u>Tolbert</u> cases cited above as well as <u>Comini v. Union Oil Co.</u>, 277 Or. 753, 562 P.2d 175 (1977); <u>Perkins v. Standard Oil. Co.</u>, 235 Or.7, 383 P.2d 107 (1963); <u>Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.</u>, 320 Or. 638 645, 891 P.2d 639 (1995); and <u>U.S. Genes v. Vial</u>, 143 Or. App. 552, 923 P.2d 1322. However, for the reasons that follow and based on my conclusions below that this claim is barred both by the statute of limitations and Plaintiff's waiver, it is unnecessary to dissect this somewhat complex and evolving area of Oregon law and I decline to do so.

### III. <u>Statute of Limitations</u>

Defendant contends that Plaintiff's claims are barred by the six-year contract statute of limitations.  As discussed above, I conclude that Plaintiff's claim based on unconscionability fails as a matter of law and, therefore, Plaintiff's claim for breach of contract also necessarily fails.  For these reasons I need not and do not address Defendant's statute of limitations arguments regarding these claims.  However, I will address Plaintiff's claim of breach of good faith and fair dealing and, having reviewed the record and parties' arguments on this issue, I conclude that this claim is time-barred.

In Oregon, the statute of limitations for contract claims – which includes claims regarding the implied covenant of good faith and fair dealing – is six years.  ORS §12.080(1); see also <u>Angelini v. Delaney</u>, 156 Or. App. 293, 966 P.2d 223 (1998). Under Oregon law, a claim for breach of contract accrues when the contract is breached.  <u>Kantor v. Boise Cascade Corp.</u>, 75 Or. App. 698, 703, 708 P.2d 356, 359 (1985) <u>rev. den</u>. 300 Or. 506 (1986).  A breach of contract is nonperformance of a duty due under a contract. <u>Id.</u> (citing <u>Restatement (Second) Contracts</u> § 235(2) (1979)).

Plaintiff argues that his breach of contract and breach of good faith claims accrued in 2011 when Defendant "refused to pay him a full monthly disability benefit amount that he is entitled to receive under the terms of the policies."  Plaintiff cites to <u>Pritchard v. Regence Blue Cross</u>, 225 Or. 455, 459, 358 P.2d 239 (2009) in support of his contention that in the insurance context, a breach accrues when the insurer denies the claim or refuses to pay the amount he is entitled to under the policy.  Defendant does not dispute this rule.  Nevertheless, it argues that the rule is inapplicable here because this is not a case where an insurer is refusing to honor a promise to pay on a contract in which it is undisputed that the insured had a right to purchase the policy.

FINDINGS AND RECOMMENDATION – 18

Instead, Defendant argues, the alleged breach is that Defendant refused to sell Plaintiff coverage in the form of the FIB increases to which Plaintiff claims he was entitled.  I agree.

As discussed above, with inclusion of the "issue limits" term in the FIB renewal provision of the policies, there was no breach by Defendant in the issuance of benefits payments to Plaintiff.  Instead, Plaintiff's allegations support the conclusion that, if there was a breach of the implied covenant of good faith and fair dealing, the breach occurred when Defendant "utilized its alleged discretion to lower the 'issue limits' that applied to plaintiff's policy." First Amended Complaint, ¶ ¶52-57.  Defendant's exercise of discretion in lowering its issue limits resulted in its refusal to renew Plaintiff's FIB provisions.  The promise not performed here was a refusal to sell not a refusal to pay.  The reduction in issue limits that first allowed Defendant to refuse to renew Plaintiff's FIB provision occurred in 1995. Chambers Decl., Ex. 9, pg. 2.  The refusals to renew occurred in 1998 and 1999 and Plaintiff was aware of facts which support his cause of action in 1999.  The statute of limitations has thus run on Plaintiff's bad faith claim and Defendant's motion for summary judgment as to this claim should be granted.[1]

## IV. __Waiver__

In its Motion for Summary Judgment, Defendant also argues that Plaintiff released all of his present claims against Defendant by entering into a Settlement Agreement and General Release in December 2000. My conclusion that summary judgment should be granted against all Plaintiff's claims for the alternative reasons discussed above makes it unnecessary to reach the question of whether Plaintiff waived his right to bring his present claims.  Nevertheless, in order

---

[1] Although not a basis for my decision here, I note with agreement Defendant's argument that under the facts here, a finding that any breach did not occur until a claim for benefits was made and paid would unfairly permit an insured to wait until an onset of disability before pursuing rights to have purchased additional insurance at an earlier date.

to create a more complete record for review, I will briefly address the parties' arguments regarding waiver.

The pertinent sections of the 2000 Settlement Agreement are set forth above.  Defendant contends that, with this agreement, Plaintiff released his right to sue Defendant for causes of action that arose from or are connected to events occurring before December 2000 and that the exception set out in paragraph 3(a) only allows Plaintiff to bring *disability* claims under the express terms of the two policies based on facts that may occur after the 2000 Settlement.

Plaintiff contends that the agreement contains "a clear exception . . . for any future claims for disability benefits that plaintiff may make pursuant to his two individual disability insurance policies" and that this exception "necessarily applies to plaintiff's 2011 claim . . . for disability benefits."  Plaintiff also asserts that his current action is "based exclusively on the decision made in 2011 that the terms of plaintiff's policies should be interpreted to mean that plaintiff was never eligible for renewal of his FIB coverage."  This assertion contravenes the allegations in Plaintiff's First Amended Complaint which focus on Defendant's actions at the time Plaintiff purchased the two policies at issue and at the time Defendant refused to renew the FIB coverage in 1998 and 1999.

Although Plaintiff alleges that he believes Defendant should have allowed him to renew the FIB provisions "in 1998 and 1999, and at every five year renewal period thereafter," this single allegation in the context of Plaintiff's First Amended Complaint fails to support his argument that the current action is "based exclusively" on Defendant's 2011 determination of the amount of benefits to which Plaintiff was entitled.  Plaintiff's allegations in support of his claim for breach of the contractual duty of good faith and fair dealing clearly all relate to events that occurred prior to 2000.  In addition, any determination of unconscionability is necessarily based

FINDINGS AND RECOMMENDATION – 20

upon facts in existence in 1994 and 1995 at the time the insurance contracts were made. <u>See</u> <u>W.L. May Co.</u>, 273 Or. at 707 (court must assess on the basis of facts in existence at the time the contract was made).  Accordingly, even if I had concluded that Plaintiff's claims otherwise survived summary judgment, I would recommend granting Defendant's motion based on a finding that, by operation of the December 2000 Settlement Agreement, Plaintiff waived his rights to bring the present claims.

## Conclusion

For the reasons set out above, Plaintiff's Motion for a Determination that there is an Unconscionable Term in the Disability Insurance Policies Defendant Issued to Plaintiff (#44) should be DENIED and Defendant's Motion for Summary Judgment as to all Plaintiff's Claims (#48) should be GRANTED.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due September 15, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 28th day of August, 2014.


_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION – 21